**ALEX S. A., Petitioner,**

v.

**JULIA A., Respondent.**

Family Court of Delaware, New Castle County.

Submitted April 9, 1980.

Decided May 22, 1980.

---

966

Frederick T. Haase, Jr., Roeberg & Associates, Wilmington, for petitioner.

Thomas Herlihy, III, Herlihy & Herlihy, Wilmington, for respondent.

ARSHT, Judge.

This is the Court's decision in advance of a hearing as requested by the attorneys, on the applicability of 13 *Del.C.* § 1701[1] to petitioner's, Alex S. A., claim that he has acquired domicile in Delaware by living two successive years in this State and, accordingly, has satisfied the jurisdictional requirement averred in his divorce petition. Respondent, Julia A., has asserted the affirmative defense that petitioner has not met the jurisdictional requirements of 13 *Del.C.* § 1504 and that § 1701 is not applicable to the case *sub judice.* Specifically, respondent asserts that petitioner has not "maintained himself and his family" during two successive years, as required by § 1701.

Petitioner has lived with his daughter and her family in New Castle, Delaware since the parties separated in November 1977. Before the current separation, respondent had filed a divorce complaint in Pennsylvania in the Spring of 1976, which was dismissed. Petitioner filed a divorce complaint in Pennsylvania in March 1977, which was "withdrawn, discontinued and ended" in December 1978. Petitioner's first Delaware divorce petition, filed with this Court on May 2, 1978, was dismissed on January 10, 1979. A second action, filed on March 12, 1979, was likewise dismissed by this Court. Petitioner's third Delaware divorce petition, the subject of the case at bar, was filed on January 16, 1980.

Since the separation, respondent has continued to live in Philadelphia, Pennsylvania, with the parties' two children, in an apartment above the tap room owned by the parties as tenants by the entireties. Respondent has apparently operated the tap room business continuously since November 1977. Petitioner, age 67, has not been employed since the separation but is receiving total disability benefits from Social Security and the Veteran's Administration. During the separation, the parties' children have received Social Security benefits on account of petitioner's disability.

In *J.F.V. v. O.W.V.*, Del.Supr., 402 A.2d 1202 (1979), the Delaware Supreme Court enunciated the "deep roots" test necessary to establish domicile in divorce jurisdiction. The Court stated at 1204:

"Residence plus an expression of intent to make Delaware home is insufficient to establish domicile without clear and unequivocal proof of permanency as expressed in *Riley.* Unless the totality of circumstances clearly establishes factors showing an integration into the chosen locale of residency, making it advantageous to remain and disadvantageous to leave, there can be no 'domicile' for purposes of a divorce, *unless the party falls within the ambit of 13 Del.C. § 1701.*" (Emphasis added; footnote omitted.)

Thus, the Delaware Supreme Court has indicated that 13 *Del.C.* § 1701 is applicable on the issue of domicile for purposes of divorce jurisdiction. Further, although that Court provided no specific guidance as to the requirements of § 1701, they clearly indicated that something other than, and probably less than, the proof necessary to establish "deep roots" is required under § 1701.

An examination of the language and history of this section, as well as the cases cited by the codifiers re domicile, none of which interpret or consider the specific language of § 1701, is necessary to determine an appropriate test under this section.

Interestingly, *New York Trust Co. v. Riley*, Del.Supr., 16 A.2d 772 (1940), quoted extensively by the Supreme Court in *J.F.V., supra*, as the basis of the "deep roots" test, and its progeny are, likewise, used by the

---

1. 13 *Del.C.* § 1701 provides: "Any person of the age of 21 years, being a citizen of this or any other state of the United States, and who has lived for 2 successive years in this State, and, for the purpose of determining domicile in any county of the State, has lived for 1 year in such county, and who has, during the time, maintained himself and his family, shall be held to have acquired a legal domicile therein."

codifiers of both the 1953 and 1974 *Delaware Code* under "Notes of Decision" to clarify the meaning of domicile under § 1701, which has remained intact since 1953. However, by its decision in *J.F.V., supra,* it is clear that a party falling within the ambit of § 1701 need not necessarily show by the totality of circumstances that he has completely integrated himself into the chosen local residency "making it advantageous to remain and disadvantageous to leave."

*Mitchell v. Delaware State Tax Com'r.,* Del.Super., 42 A.2d 19 (1945) provides some guidance as to the standard to be used and the issue of presumption as it affects proof of domicile. After quoting almost the exact paragraph in *Riley* which was quoted in *J.F.V.,* the Superior Court stated at 22:

"It is axiomatic that everyone must have a domicil, and that no one can have more than one domicil at the same time. It follows that a domicil once established is not abandoned until a new one is acquired by the combination of physical presence at the new place coupled with the intention to make that place home. Residence at a place and the intent to live there permanently or indefinitely constitute domicil, and when in point of time residence and intent concur, domicil follows as a legal consequence. *The place of residence is prima facie the domicil, unless there is some motive for that residence not inconsistent with a clearly established intention to retain a permanent residence elsewhere.* 17 Am.Jur. 638. *A domicil once acquired is presumed to continue, and the burden of proving a change of domicil is on the person alleging it; but the presumption weakens with time, and residence elsewhere may rebut the presumption of continuance of domicil when it is of such length and in such circumstances as indicate an intention to adopt a new locality as a domicil.*" (Emphasis added.)

▉▉▉ Thus, while a party who relies upon a change of domicile to his advantage

has the burden of proving the change by a fair preponderance of the evidence, *New York Trust Co. v. Riley, supra; Taormina v. Taormina Corp.,* Del.Ch., 78 A.2d 473 (1951), by his continued residence in Delaware for two successive years coupled with an expression of intent to make Delaware his home, petitioner has successfully rebutted the presumption of the continuance of his Pennsylvania domicile. Thus, his place of residence, Delaware, is prima facie his domicile, absent a showing by respondent by a fair preponderance of the evidence, that petitioner has retained a permanent residence elsewhere: that is, that in fact he has not abandoned his prior domicile.[2]

The next issue to be resolved is the relevancy of that portion of § 1701 requiring that a person "[has] maintained himself and his family" during the two year period.

The derivation of 13 *Del.C.* § 1701 is 40 Del.Laws, Ch. 209 § 1; Code 1935, § 1132. The language of this prior section is verbatim that which appears in § 1701, with the exception that the term "domicile" has been substituted for the term "legal settlement" used in the original bill and code. Furthermore, this provision, although titled in 40 Del.Laws "Title 15; Domestic Relations; Chapter 209; Legal Settlement," appears in the 1935 code under Chapter 41, State Board of Charities.

The only definition of settlement that is related to "domicile" is the use of that phrase re poor laws: "A right acquired by a person, by continued residence for a given length of time in a town or district, *to claim aid or relief under poor–laws in case of his becoming a pauper.*" Black's Law Dictionary, Fourth Edition, 1968 at 1539. (Citations omitted; emphasis added.)

Thus, the requirement that a person maintain himself and his family in Delaware for two successive years was designed to prevent poor, unemployed persons from moving into the State and automatically gaining entitlement to state or county welfare.

---

2. The bare fact that one of petitioner's motives for moving to this State may have been to take advantage of the liberal divorce laws, is not, in and of itself, a sufficient rebuttal. See e. g.,

*L.B. v. M.B.,* Del.Super., No. 3907, 1975, Walsh, J. (6/8/76); *C.W.H. v. J.C.H.,* Del.Fam.Ct. No. 801–77, Cobin, J. (3/10/78).

The right to travel from state to state uninhibited by rules, statutes or regulations which unreasonably burden or restrict such movement is a firmly established and repeatedly recognized constitutional right, *U. S. v. Guest*, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1960); and "any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional." *Shapiro v. Thompson*, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969). (Citations omitted.)

In *Shapiro, supra*, the Supreme Court in striking down waiting period provisions that denied welfare benefits to otherwise eligible applicants solely because they had recently moved into the jurisdictions held that, ". . . neither deterrence of indigents from migrating to the State nor limitation of welfare benefits to those regarded as contributing to the State is a constitutionally permissible state objective" such as would satisfy the State's compelling interest burden. *Id.*, 394 U.S. at 633, 89 S.Ct. at 1331.

Thus, the original purpose of the maintenance language in § 1701 is no longer constitutionally sound in that Delaware certainly could not require an individual to be self–supporting for a two–year period before becoming eligible for public assistance.

Likewise, while a state can still require residence (a place of permanent abode plus intent to remain) within the state for the purpose of obtaining state benefits, in light of the rationale of *Shapiro* a state cannot constitutionally restrict indigents from obtaining such benefits because they are not self–supporting.[3] The fact that the Delaware Supreme Court has already ruled in *J.F.V., supra*, that domicile under 13 *Del.C.* § 1701 does not require "deep roots," the literal reading of § 1701 that Respondent requests would mean that a person must be both self–supporting and the support of his family for two years in order to become a domiciliary of this state, pursuant to that section.

While a state clearly may have a constitutionally sound durational requirement for obtaining a divorce, *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), and thus the six–month provision of § 1504, and the alternate two–year period of § 1701 are valid restrictions, to require an individual to have "maintained himself and his family" in order to obtain legal domicile within Delaware for divorce or other purposes, is a restriction that is clearly constitutionally prohibited in light of *Shapiro*.[4]

Accordingly, based on the undisputed facts which are that: Petitioner has shown continued residence in Delaware since November 1977 and intends to make Delaware his permanent home; and, absent any evidence that he retained his prior domicile, this Court would hold that he has satisfied the jurisdictional requirements set forth in his divorce petition dated January 16, 1980 by having become a Delaware domiciliary in accordance with 13 *Del.C.* § 1701.

Respondent does, however, have the right to a hearing if she claims that petitioner has retained a domicile elsewhere.

---

**3.** See also *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) wherein it was held that indigents could not be denied an opportunity to obtain access to divorce courts because they could not afford a filing fee.

**4.** However, should the maintenance provision of § 1701 be held to be constitutionally sound within the context of divorce domicile, under the facts of the case *sub judice* the Court would have held that Petitioner has, to the extent of his abilities, "maintained himself and his fami-

ly" while residing in Delaware for the required period of time. The specific facts that support this conclusion are as follows: Petitioner is disabled and is, thus, generating only disability income; and, Respondent has retained the prior or sole source of the family's income, the taproom business, which she continues to operate; and, the parties' now adult children living with Respondent receive income as a direct result of Petitioner's disability.