DISTRICT OF COLUMBIA, Appellant,

v.

**Ronald E. WOODS, Appellee.**

No. 82–411.

District of Columbia Court of Appeals.

Argued May 3, 1983.

Decided Aug. 4, 1983.

---

Richard G. Amato, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, Lutz Alexander Prager and Richard L. Aguglia, Asst. Corp. Counsels, Washington, D.C., were on the brief, for appellant. James E. Lemert, Asst. Corp. Counsel, Washington, D.C., also entered an appearance for appellant.

Fredric J. Einhorn, Olney, Md., for appellee.

Before NEBEKER, MACK and FERREN, Associate Judges.

NEBEKER, Associate Judge:

This case involves appellee's District of Columbia income taxes for the years 1976, 1977 and 1978. After denial of cross-motions for summary judgment, the trial court issued a trial ruling that appellant, the District of Columbia, must refund appellee for taxes paid on those years. The trial court found that Mr. Woods became a domiciliary of Florida beginning in 1976, despite his continuing residence in the District of Columbia as a foreign service officer assigned to the State Department.[1] The District challenges the order to refund, urging that the trial court erred as a matter of law by finding on the facts as presented that Mr. Woods had changed his domicile in 1976.[2] We agree and reverse.

## I

The facts are not in dispute.[3] Mr. Woods, a career foreign service officer, was reassigned to the State Department in the Dis-

---

1. After Mr. Woods paid his back tax assessments, he filed a claim for a refund, asserting that though physically resident in the District of Columbia during the years in question, he was not, because of his residency, subject to local income taxes by virtue of D.C.Code § 47–1801.4(17) (1981). This provision states:

    The word "resident" means every individual domiciled within the District on the last day of the taxable year, and every other individual who maintains a place of abode within the District for more than 7 months of the taxable year, whether domiciled in the District or not. The word "resident" shall not include ... any officer of the executive branch of such government whose appointment to the office held by him was by the President of the United States and subject to confirmation by the Senate of the United States and whose tenure of office is at the pleasure of the President of the United States, unless such officers are domiciled within the District on the last day of the taxable year.

2. Mr. Woods does not appeal the trial court's finding that he was a domiciliary of the District until 1976.

3. "[W]here, upon admitted or undisputed facts, the decision turns on controverted legal principles, it is reviewable. Here, there is no dispute as to the essential facts. The conflict relates only to their legal effect." *Sweeney v. District of Columbia,* 72 U.S.App.D.C. 30, 32, 113 F.2d 25, 27, *cert. denied,* 310 U.S. 631, 60 S.Ct. 1082, 84 L.Ed. 1402 (1940). We may therefore review the trial court's ruling.

trict of Columbia in 1974. He and his wife purchased a condominium in the District and otherwise established residency.[4] The trial court found that Mr. Woods thereby became a District domiciliary. He continuously resided in the District during the operative years.

Mr. Woods conceded that he owns no real property in Florida and has never owned a Florida residence. He has visited Florida on several occasions, but the record shows that he has never remained there for more than about three weeks. Mr. Woods had no investments of any kind in Florida from 1976 through 1978. He did, however, maintain a bank account with about fifty dollars. In 1976, while on a visit to inspect "investment" property, Mr. Woods had opened the account. At that time, he registered to vote and enrolled in the Democratic party. Since 1976, he has voted in Florida by absentee ballot in national, state, and local elections.

Although Mr. Woods claimed at trial that he had established domicile in Florida long before 1976, he filed no tax returns in Florida until 1976. In 1976, 1977 and 1978, he filed intangible personal property tax returns. He did not, however, have intangible personal property in an amount which would create tax liability.

Stating correctly that domicile requires both (1) an intention to remain indefinitely, and (2) physical presence, the trial court ruled that Mr. Woods had demonstrated his *intention* "to become a resident and domiciliary of Florida while he was physically present in that jurisdiction in 1976," during his visit to view investment property.

## II

It may be inferred that the nub of the trial court's opinion was that appellee's physical presence in Florida during his 1976 visit coupled with his then present intention to make Florida his domicile effected a change in his domicile at that time. This determination, however, betrays a misinterpretation of the law of domicile, and reduces the physical presence prong of the test to a nullity.

■ The two requisites for establishing a change of domicile are "(1) physical presence, and (2) an intent to abandon the former domicile and remain [in the new one] for an indefinite period of time ...." *Heater v. Heater,* 155 A.2d 523, 524 (D.C. 1959). It is with physical presence that we are concerned. Mr. Woods bore the burden of establishing the change in his domicile. *See District of Columbia v. Murphy,* 314 U.S. 441, 456, 62 S.Ct. 303, 310, 86 L.Ed. 329 (1941) ("If one has at any time become domiciled [in the District], it is his burden to establish any change of [domicile] upon which he relies to escape the tax." The District does not dispute that Mr. Woods had the requisite intent, but argues that he never demonstrated physical presence. We agree.

■ "Intent alone to establish a new place of abode without physical presence there is neither sufficient to abandon a former domicile nor to establish a new one. There must be a concurrence of the two requisites before a new domicile comes into being." *Jones v. Jones,* 136 A.2d 580, 581–82 (D.C.1957). *See generally Shilkret v. Helvering,* 78 U.S.App.D.C. 178, 138 F.2d 925 (1943); *Heater v. Heater, supra,* 155 A.2d at 524. "Mere absence from a fixed home, however long continued, cannot work the change [in domicile]." *Shilkret v. Helvering, supra,* at 180, 138 F.2d at 927. In this light, we do not understand physical presence to mean only a temporary visit. There must be the establishment of a new physical residence. Residence in fact is an essential element of domicile. *See Stine v. Moore,* 213 F.2d 446, 448 (5th Cir.1954); *Bache Halsey Stuart, Inc. v. Namm,* 446 F.Supp. 692, 694 (S.D.N.Y.1978); *Alex S.A. v. Julia A.,* 419 A.2d 965, 968 (Del.Fam.Ct.

---

4. Mr. Woods listed his condominium address as his permanent address in passport applications. Further, he obtained the necessary driver's license, registration and tags for the District. He maintained two local bank accounts.

1980). *See also Anwo v. Immigration & Naturalization Service,* 197 U.S.App.D.C. 121, 123 n. 7, 607 F.2d 435, 437, n. 7 (1979). As *Alexander v. District of Columbia,* 370 A.2d 1327, 1329 (D.C.1977), indicates "actual removal" to the new location must be shown. *See Wetherstein v. Wetherstein,* 111 So.2d 292, 293 (Fla.Dist.Ct.App.1959). This has not been done.[5] The judgment of the trial court, erroneous as a matter of law, is reversed and the case remanded with directions to enter judgment for the District of Columbia.

*Reversed and remanded.*

5. We are not persuaded by appellee's assertion during oral argument that our holding would punish Mr. Woods for the nature of his profession by denying him the domicile of his choice. He was free to change his domicile by appropriate presence and intent anytime his employment status permitted the change.