Desmond BARTHOLOMEW,
Petitioner,

v.

DISTRICT OF COLUMBIA OFFICE
OF TAX AND REVENUE,
Respondent.

No. 12–AA–169.

District of Columbia Court of Appeals.

Argued Feb. 14, 2013.

Decided Oct. 24, 2013.

Desmond Bartholomew, pro se.

Bradley A. Sarnell, Assistant Attorney General, with whom Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on brief, for respondent.

Before BECKWITH and McLEESE, Associate Judges, and RUIZ, Senior Judge.

RUIZ, Senior Judge:

Petitioner, Desmond Bartholomew, brings this appeal against the District of Columbia Office of Tax and Revenue (OTR), claiming that the OTR erroneously determined that he was a domiciliary of the District of Columbia for tax purposes and that he was not a bona fide resident of the United States Virgin Islands (USVI) during 2003 and 2004, making him subject to taxation in the District of Columbia in those years. He also claims that the amount of tax assessed is too high because OTR improperly denied his claim to head of household filing status and disallowed deductions for moving expenses and income taxes withheld from his paychecks by the USVI government. Petitioner made several strong arguments in support of his position, but ultimately, however, we must affirm the decision of the Office of Administrative Hearings affirming OTR's determinations. We conclude that substantial evidence supports the administrative decision that Bartholomew was domiciled in the District of Columbia during the relevant tax years. Even though we fault the determination that he was not a bona fide resident of the USVI, we affirm the agency's ultimate conclusion that Bartholomew was subject to D.C. tax, because he failed to comply with the tax provision available to bona fide residents of the USVI that would have exempted him from filing federal and D.C. tax returns. We see no error requiring reversal concerning the amount of the tax assessment.

## I.

Desmond Bartholomew is a native of Grenada who lived in Washington, D.C. with his wife and daughter until May 2002, when he accepted a job as chief economist for the U.S. Virgin Islands Bureau of Economic Research. He moved to St. Thomas and lived there until mid–2005, while his

family continued to reside in the District of Columbia.

While living and working in the USVI, Bartholomew filed federal income tax returns for tax years 2003 and 2004 with the Internal Revenue Service. In those forms, he listed his previous Washington, D.C. address on Farragut Street as his "home address." Bartholomew did not file a tax return with the USVI or with the District of Columbia for either year. In late 2004, Bartholomew was diagnosed with a potentially serious medical disorder, and was advised by his doctor to seek treatment in the United States mainland. In early 2005, Bartholomew purchased the apartment in the District of Columbia where his wife and child had been living. In May 2005, Bartholomew resigned from his post with the USVI government and returned to live with his family.

After returning to the District of Columbia, Bartholomew filed an amendment to his 2003 federal tax return, which triggered an inquiry from the OTR. As a result of that inquiry, OTR determined that Bartholomew should have filed an income tax return—form D–40—with the District of Columbia for the years 2003 and 2004 because it determined that he was still a resident of the District. OTR sent Bartholomew a notice in August 2008, informing him that he owed the District a balance of $3,228.71 for the tax years 2003 ($3,122.47) and 2004 ($106.24). In addition, OTR garnished Bartholomew's wages and disallowed Bartholomew's itemized deductions and moving expenses for lack of substantiation for the year 2003. Bartholomew believed he did not owe the District any taxes, as he was residing in the USVI

during those years, and in September 2008 he requested an audit. Richard Mack, an auditor with OTR, was the lead investigator assigned to Bartholomew's audit.

Nearly three years later, in February 2011, OTR sent a Notice of Proposed Audit Changes that increased Bartholomew's total tax deficiency to $8,719.00. Bartholomew met with the auditor on March 17, 2011, in an "Informal Conference" as part of the audit process. They discussed Bartholomew's status as a resident of the USVI, and despite Bartholomew's protests, the auditor determined that he was a resident of the District in 2003 and 2004 for tax purposes. To determine that Bartholomew was not a resident of the USVI during those years, the auditor focused on whether Bartholomew intended to abandon his domicile in D.C., or had established that he "was no longer a resident of the District of Columbia." Despite the fact that Bartholomew could prove he worked and lived in the USVI from mid–2002 to mid–2005, the auditor relied on the following factors to determine that Bartholomew was not a bona fide resident of the USVI in 2003 and 2004: Bartholomew did not file a USVI tax return in 2003 or 2004; he listed his D.C. address as his home address on his federal tax returns for those years; his wife and child remained in D.C. at the address Bartholomew lived in both before and after his time in the USVI; and he had not registered to vote in the USVI. The auditor reported that for the years 2003 and 2004, Bartholomew paid only federal tax, but no local taxes (either to D.C. or the USVI).[1]

---

1. This was incorrect, as Bartholomew pointed out when cross-examining the OTR auditor during the hearing before OAH. The W–2VI statements issued by the USVI government showed that USVI taxes were withheld from Bartholomew's paychecks: $5,939.00 in 2003, and $5,392.60 in 2004. *See generally* 48 U.S.C. §§ 1397, 1642, 7651 (2003) (establishing principle that U.S. tax code is equally applicable in USVI and mechanism whereby taxes paid by USVI residents are collected by IRS and transferred to treasury of USVI).

Following the informal conference, OTR sent a letter dated May 26, 2011, to Bartholomew, notifying him that his tax deficiency and penalty increased again, this time to $10,997.00. The letter explained the reason for the tax assessment, including OTR's determination that Bartholomew was not a bona fide resident of the USVI and that he had retained his domicile in the District, quoting several statutes, including D.C.Code §§ 47–1805.02 (2001), –1801.04 (2001), and 26 U.S.C. § 932(c) (2003).[2] OTR reaffirmed its determination that Bartholomew was not a bona fide resident of the USVI:

> No new information was presented at the informal conference, which was held on 3/17/2011, to establish your intent to abandon your residence in the District of Columbia or to establish a new domicile in the U.S. Virgin Islands. For example, while in the Virgin Islands, you were purchasing a home in the District of Columbia. Your letter of resignation from the Bureau of Economic Research, St. Thomas, V.I. was dated 4/13/2005 and you previously purchased your home in the District of Columbia with a settlement date of 1/2005. No information was presented to establish a home in the USVI. No payment of taxes to the USVI was established since you have stated no tax returns were filed for the years, 2003 and 2004, with the USVI [Bureau of Internal Revenue] to date. Your domicile with your wife and daughter is in the District of Columbia prior to your work in the USVI, and you returned to the same address and domicile, which you purchased in January, 2005. Therefore, Form D–40 Individual Income Tax Return was due for the year 2003 and 2004.

Bartholomew filed a Taxpayer's Protest of a Proposed Assessment, appealing the assessment to the Office of Administrative Hearings (OAH) on June 2, 2011. A hearing was held on September 8, 2011, with Administrative Law Judge (ALJ) Claudia Barber presiding. At the hearing, Bartholomew testified on his own behalf, claiming that he was a bona fide resident of the USVI, and not domiciled or a resident of the District of Columbia, during the years 2003 and 2004. He explained—and submitted documentary proof—that he filed a federal income tax return, even though he was not required to do so, and that he had not filed a tax return with the USVI, but that income taxes were withheld from his paychecks by the USVI while he was working there. Bartholomew stated that he still had not filed a tax return with the USVI as of the date of the hearing because he was waiting for the audit with OTR to be resolved. In support of his claim that he was a resident of the USVI during 2003 and 2004, Bartholomew testified about his ties to the local community (he made charitable contributions to organizations in the USVI and attended two local churches); stated that his trips back to Washington, D.C. were work-related; and offered into evidence a blank check with his printed name from a bank in the USVI to show that he had established an account for his financial transactions in the USVI.

The auditor testified at the hearing in support of OTR's conclusion that Bartholomew had not been a resident of the USVI but of the District of Columbia during 2003 and 2004. First, he noted that Bartholomew did not file a tax return with the USVI. Second, the auditor found it important that Bartholomew's wife and child remained in the District during the time

---

**2.** Unless otherwise noted, all citations to the United States Code refer to the edition in effect in 2003.

covered by the audit, and that on his USVI employment documents, Bartholomew listed the apartment on Farragut Street in Washington, D.C., as his home address, the same apartment he later purchased in January 2005. Third, Bartholomew never registered to vote in the USVI, and left his automobile and other possessions in the District of Columbia.

After the hearing, OAH allowed both parties to submit post-hearing briefs on the legal arguments, as well as status updates on an issue regarding wage garnishments. After considering the briefs, OAH concluded that Bartholomew "was not a bona fide resident of the U.S. Virgin Islands during the tax period of 2003 and 2004." Thus, according to OAH, he "was required to file U.S. and DC tax returns for the requisite period because [he] never relinquished his residency in the District of Columbia and never changed his domicile." *Bartholomew v. District of Columbia Office of Tax and Revenue,* Case No. 2011–OTR–00015, 2011 WL 8844133, at *1 (Dec. 15, 2011). The OAH ordered Bartholomew to pay taxes owed to the District in the amount of $7,033, but did not require him to pay interest or penalty because the OTR audit had taken a long time through no fault of his own.

Bartholomew moved for reconsideration and a stay of the OAH order. In his motion, he attempted to add new evidence to the record to support his argument that he was a bona fide resident of the USVI: a checking account statement from a USVI bank for the period of August 10–September 10, 2004; a payroll stub dated April 30, 2005, reflecting direct deposit to a USVI bank; and a letter dated June 7, 2002, from Ford Motor Credit Corp. authorizing him to take his vehicle to the USVI. Bartholomew also argued that he was entitled to a head of household exemption (2004), and to deductions for moving expenses

(2003) and taxes withheld by the USVI government (2003 and 2004). OAH denied the motion for a stay of payment because it found that Bartholomew had not stated "any ground or reason warranting a stay" under OAH Rule 2830.4: "whether [Bartholomew was] likely to succeed on the merits, whether denial of the stay will cause irreparable injury, whether and to what degree granting the stay will harm other parties, and whether the public interest favors granting a stay." OAH determined that Bartholomew's proffered evidence of residence in the USVI would "not be made part of the record [or] considered," because Bartholomew had not persuaded it that "[n]ew evidence has been discovered that previously was not reasonably available," as required by OAH Rule 2828.5(e). Nonetheless, OAH concluded that the proffered evidence did "not change the facts and circumstances analysis" in its final order. After considering—and disallowing—Bartholomew's claim for deductions, OAH denied the motion for reconsideration. Bartholomew filed this timely petition for review of the OAH order.

## II.

"[I]n this world nothing can be said to be certain, except death and taxes." Letter from Benjamin Franklin to Jean Baptiste Leroy (Nov. 13, 1789), *in* 10 THE WRITINGS OF BENJAMIN FRANKLIN 69 (Albert Henry Smyth ed.) (1970). Though taxes might be certain, tax laws still require interpretation, and in this case we must discern the government body to which Bartholomew was required to send his tax return and pay taxes. Bartholomew claims that he was a resident of the USVI for the tax years 2003 and 2004, and that, as such, he did not owe taxes to the District of Columbia. Bartholomew bases this claim on the fact that he was not required

to file a federal or D.C. income tax return but was required to file a tax return only with the USVI. OTR defends OAH's affirmance of the determination that Bartholomew had not abandoned his domicile in the District and had not established himself as a bona fide resident of the USVI during tax years 2003 and 2004.

Our review of OAH decisions is governed by D.C.Code § 2–510(a)(3)(A) (2013 Repl.) (providing that a court may set aside administrative action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."). We must "affirm an OAH decision when (1) OAH made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) OAH's conclusions flow rationally from its findings of fact." *Morris v. United States Envtl. Prot. Agency*, 975 A.2d 176, 180 (D.C.2009) (citation omitted). However, this court generally reviews issues of statutory construction *de novo, see Wynn v. United States*, 48 A.3d 181, 188 (D.C.2012), giving deference to the reasonable interpretation of the agency charged with implementing the statute, which, in this case, is OTR.[3] *See Hotel Tabard Inn v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 747 A.2d 1168, 1174 (D.C.2000) (citations omitted). In cases such as this, where questions of law and fact are mixed, we apply "our usual deferential standard of review for factual findings ... and apply *de novo* review to the ultimate legal conclusions based on those facts." *District of Columbia Office of Tax & Revenue v. BAE Sys. Enter. Sys., Inc.*, 56 A.3d 477, 480 (D.C.2012) (internal quotations and citations omitted).

This case requires us to consider two similar, but distinct concepts within the context of tax liability: domicile and residence. The distinction between domicile and residence is especially important in this case, because of the tax provision made applicable by 26 U.S.C. § 932 to bona fide residents of the USVI.

### *The federal tax scheme applicable to the USVI*

In 1921, shortly after the United States acquired the Virgin Islands from Denmark, Congress created a tax system for the Virgin Islands designed to make it self-supporting. *See HMW Indus., Inc. v. Wheatley*, 504 F.2d 146, 150 (3d Cir.1974) (citation omitted). The USVI operates under a "mirror code" of the Internal Revenue Code, which substitutes "Virgin Islands" for "United States." *See* 26 U.S.C. §§ 932(c)(2), 7654(a); 48 U.S.C. § 1397; *Coffey v. C.I.R.*, 663 F.3d 947, 949 (8th Cir.2011). Under this statutory scheme, bona fide residents of the USVI may be exempt from the obligation to file a return and pay taxes to the United States. *See Vento v. Director of Virgin Islands Bureau of Internal Revenue*, 715 F.3d 455, 465 (3rd Cir.2013). Section 932 of the Internal Revenue Code provides that a person who is a bona fide USVI resident must file an income tax return with the USVI. 26 U.S.C. § 932(c)(2); *cf.* 26 U.S.C. § 932(a)(2) (requiring that persons with USVI-derived income who are not bona fide USVI residents file returns "with both the United States and the Virgin Islands"). To qualify for U.S. tax exemption, a person must satisfy three requirements set out in the statute:

> (4) Residents of the Virgin Islands.—In the case of an individual—

---

**3.** OAH is not considered an agency to which we owe deference on issues of statutory interpretation. *See District of Columbia Dep't of*

*Env't v. E. Capitol Exxon*, 64 A.3d 878, 881 (D.C.2013).

(A) who is a bona fide resident of the Virgin Islands during the entire taxable year,[4]

(B) who, on his return of income tax to the Virgin Islands, reports income from all sources and identifies the source of each item shown on such return, and

(C) who fully pays his tax liability referred to in section 934(a) to the Virgin Islands with respect to such income,

for purposes of calculating income tax liability to the United States, gross income shall not include any amount included in gross income on such return, and allocable deductions and credits shall not be taken into account.

26 U.S.C. § 932(c)(4).

"Thus, bona fide Virgin Islands residents who fully report their income and satisfy their obligations to the [USVI Bureau of Internal Revenue] do not pay taxes to the IRS." *Vento*, 715 F.3d at 465 (citing *Abramson Enters., Inc. v. Gov't of Virgin Islands*, 994 F.2d 140, 144 (3d Cir.1993)).[5] This is true even if the taxpayer is also a resident of some other jurisdiction in the United States, so long as he or she fulfills "each of the three requirements of § 932(c)(4)." *Huff v. C.I.R.*, 135 T.C. 222, 226 (2010) (noting that "§ 932(c) requires only that taxpayers have a bona fide residency in the Virgin Islands, not that they lack bona fide residences elsewhere"); *accord Vento*, 715 F.3d at 465. However, if the taxpayer fails to meet any one of the three requirements, he or she must file a federal income tax return. *See Huff*, 135 T.C. at 226. As a result, a resident of the USVI who fails to qualify under § 932(c)(4) may be required to file a tax return with the IRS. *See id.*[6]

■ The case before us does not directly involve payment of taxes to the IRS or the USVI but to the District of Columbia. The tax provision available to bona fide residents of the USVI is critical to this case, however, because under the law of the District of Columbia, every "resident ... who is required to file a federal [tax] return" must also "file a return" in the District of Columbia. D.C.Code § 47–1805.02(1) (2001). In this context, a "resident" is defined to include anyone who is "domiciled in the District [of Columbia] at any time during the taxable year," as well as "individual[s] who maintain[ed] a place of abode within the District for an aggregate of 183 days or more during the taxable year." D.C.Code § 47–1801.04(42) (2001). Thus, in the ordinary course, individuals who are domiciled in the District, as well as certain residents, must file a tax return with the District of Columbia if they are required to file a federal return. But a bona fide USVI resident who files a return with and reports all sources of income to the USVI is not required to file a federal return, *Huff*, 135 T.C. at 230, because such income is excluded from the calculation of gross income for federal tax purposes. *See* 26 U.S.C. § 932(c)(4). Therefore, a bona fide USVI resident is

---

4. During 2003 and 2004—the tax years at issue in this case—the statute referred to USVI residents "at the close of the tax year." That distinction is not relevant to this case.

5. Because the federal and USVI tax codes mirror each other, the taxpayer's liability to the USVI is usually the same as it would be to the IRS. The difference is which governmental entity receives the taxpayer's return and gets the benefit of the tax payment. *See Ven-*

*to*, 715 F.3d at 465 (noting that, with only limited exceptions for USVI tax incentives related to USVI-source income, tax scheme should not result in "tax competition" between U.S. and USVI, citing 26 U.S.C. § 934).

6. Other provisions of the tax code pertain to bona fide residents of Puerto Rico, Guam, American Samoa, and the Northern Mariana Islands. *See generally* 26 U.S.C. § 937.

also not required to file a return with or pay taxes to the District of Columbia. This is the status Bartholomew claims for himself.

Domicile and residency are related but legally distinct concepts, with different tax consequences. In the proceedings to date, there has been a tendency to conflate and confuse the two. We pause to explain the meaning of both domicile and bona fide residency in the tax context. We also review the administrative determination of Bartholomew's domicile and residency, which involves "a mixed legal-factual conclusion." *See In re Estate of Derricotte,* 744 A.2d 535, 538 (D.C.2000).

## A. *Domicile*

 "Domicile, once established, is presumed to continue until it is shown to have been changed." *Id.* (citing *Dixon v. Dixon,* 190 A.2d 652, 654 (D.C.1963)). To establish a change of domicile, a person must demonstrate both " '(1) physical presence, and (2) an intent to abandon the former domicile and remain [in the new one] for an indefinite period of time.' " *District of Columbia v. Woods,* 465 A.2d 385, 387 (D.C.1983) (quoting *Heater v. Heater,* 155 A.2d 523, 524 (D.C.1959)); *see generally Sweeney v. District of Columbia,* 113 F.2d 25, 28–31 (D.C.Cir.1940) (developing the test for domicile). The burden of proving these two elements is on the person who claims a change in domicile, *Woods,* 465 A.2d at 387 (citing *District of Columbia v. Murphy,* 314 U.S. 441, 456, 62 S.Ct. 303, 86 L.Ed. 329 (1941)), who must clearly show both intent to stay and physical presence, as neither is sufficient by

itself to show a change in domicile. *Id.* at 387–88.

 Although one of our cases suggests that more weight should be put on the physical presence factor, *see Alexander v. District of Columbia,* 370 A.2d 1327, 1329–30 (D.C.1977), most of our cases have emphasized that the intent to permanently change domicile is essential, even when a person has changed physical location. *See, e.g., Abulqasim v. Mahmoud,* 49 A.3d 828, 834–35 (D.C.2012) (divorce) ("To satisfy domicile, a person must establish: (1) physical presence and (2) an intent to abandon the former domicile and remain [at the new location] for an *indefinite period of time;* a new domicile comes into being when the two elements coexist." (internal quotation marks omitted)) [7]; *In re Orshansky,* 804 A.2d 1077, 1091 (D.C.2002) (probate) ("Physical presence in a new location does not defeat the presumption of continuing domicile unless an intent to abandon a former domicile in favor of a new one is also proven." (internal quotation marks and citation omitted)); *In re Derricotte,* 744 A.2d at 538 (probate) ("But physical presence, even for an extended length of time, does not defeat the presumption of continuing domicile unless an intent to abandon a former domicile in favor of a new one is also proven. The burden of proving both elements—presence *and* intent to establish a new place of abode—is on the party who claims that a change of domicile has taken place." (internal quotation marks and citations omitted)). Thus, physical presence in a "new" location, by itself, is not sufficient to effect a change in domicile; the taxpayer must also intend to remain there indefinitely

---

**7.** In *Abulqasim* the court considered whether the trial court had jurisdiction over a divorce action under DC Code § 16–902 (2001), which requires the "residence" of a party in the District of Columbia. That provision, however, had been interpreted as being equiv-

alent, for the purposes of the statute, to "domicile." *Abulqasim v. Mahmoud,* 49 A.3d 828, 834–35 (D.C.2012) (quoting *Rzeszotarski v. Rzeszotarski,* 296 A.2d 431, 434 (D.C.1972)). There is no similar equivalence in the tax context.

and abandon the former domicile. A "multitude of factors" must be considered when determining a particular individual's intent to abandon an established domicile for a new one. *Comptroller of the Treasury, Income Tax Div. v. Haskin,* 298 Md. 681, 472 A.2d 70, 75 (1984) (citation omitted); *see also Alexander v. District of Columbia,* 370 A.2d 1327, 1329–30 (D.C.1977) (considering many factors specific to the individual taxpayer in determining that he had established the intent to abandon his former domicile in the District of Columbia).

In this case, OAH applied its understanding of domicile to conclude that Bartholomew was domiciled in the District of Columbia for the 2003 and 2004 tax years. To reach this conclusion, OAH relied on the abovementioned cases, which hold that until a new domicile is established, the old one remains.[8] It is clear from the record that, prior to 2002, Bartholomew lived in an apartment in the District with his wife and child. Therefore, to demonstrate a change in domicile to the USVI, Bartholomew needed to show that he was physically present in the USVI *and* that he intended to abandon his old domicile in the District of Columbia and stay in the USVI for an indefinite period of time. *See* D.C.Code § 47–1801.04(42) (2001) ("In determining whether an individual is a resident, an individual's absence from the District for temporary or transitory purposes shall not be regarded as changing his domicile or place of abode."); *Woods,* 465 A.2d at 387. There is no doubt that in this case Bartholomew satisfies the physical presence test because he lived in the USVI for two years. However, OAH concluded that he did not intend to abandon his domicile in the District of Columbia and remain in the USVI indefinitely.

We agree that, applying the correct legal principles, the weight of the evidence supports the determination that Bartholomew's domicile remained in the District of Columbia. Bartholomew argues that when he left the District of Columbia in 2002 he had accepted an open-ended job offer from the USVI government and moved to St. Thomas with the intent to remain in the USVI indefinitely. The evidence presented at the hearing, however, suggests otherwise. First, his wife and child remained in the District, and when Bartholomew returned to the District on business trips, he always made a point to visit his family. After two and-half years in the USVI, he returned to the District to live with his family. Bartholomew need not, as a matter of law, have the same domicile as his wife and child, but the evidence of record is that they were a family unit and it is reasonable to infer that they would intend, eventually, to be together in the same place. Even if, as Bartholomew contends, he and his wife consulted a real estate agent in USVI to find a house there, and his return was due to an unexpected need for medical treatment—with the implication that the whole family would have moved to the USVI once things were settled—the fact remains that the family did not move there, but stayed in the District of Columbia. Second, on his 2003 and 2004 federal income tax returns, Bartholomew identified the District of Columbia address where his wife and child were living as his "home address." Bartholomew explained that initially he did so as a consequence of the difficulty in acquiring a P.O. Box in the USVI, and the fact that, by the time he filed his 2004 return in 2005, he had already decided to move back to the District of Columbia for health rea-

---

8. In this case, Bartholomew would be subject to D.C. tax only if he was domiciled in the District of Columbia, as he was not otherwise a "resident" as defined by D.C.Code § 47–1801.04(42).

sons. Nonetheless, Bartholomew's own actions cut against his argument that he intended to establish a new domicile in the USVI.

Third, although Bartholomew testified that he had formed ties with civic and cultural organizations in the USVI, including the Grenada Association of St. Thomas, which was engaged in an effort to help Grenada recover from the devastation caused by hurricane Ivan in 2004, he was unable to provide proof substantiating this testimony, which the ALJ thought was "self-serving" and did not find to be credible. In the absence of objective proof otherwise, because the ALJ was in a better position to assess testimony presented at the hearing, we must defer to her credibility finding. See Raphael v. Okyiri, 740 A.2d 935, 945 (D.C.1999) (deferring to the ALJ's credibility findings because "only the ALJ heard testimony and observed the demeanor of the witnesses"). Nor did Bartholomew establish that he had shown sufficient financial ties in the USVI. The ALJ did not credit Bartholomew's testimony that he engaged in ongoing banking activity in the USVI as he provided only a blank check from his USVI bank account,[9] did not provide bank statements from a bank in the USVI,[10] and requested that his 2003 and 2004 federal tax refunds be deposited in a bank account with a different routing number from the one he presented as his USVI bank account. Bartholomew

explains that he had directed payment of the tax refund to a longstanding bank account in the District of Columbia, where he had an outstanding balance on a line of credit. Even accepting this explanation, what this fact underscores is that the "center of gravity" of his finances remained in the District of Columbia—where financial obligations to the bank and to his family were sited—even if his income was derived from employment in the USVI.

Finally, Bartholomew did not take other steps that would have demonstrated his intent to establish himself as a domiciliary of the USVI, such as obtaining a driver's license or registering to vote. Petitioner offered plausible reasons why he did not do so during his time in the USVI. He did not obtain a USVI driver's license because he did not have a car there;[11] nor did he register to vote, because, as he explained at the hearing, he had never voted in any election, national or local, when he lived in the District of Columbia. These items, while not required to prove domiciliary status, are nonetheless indicative of intent to remain in a place indefinitely, and, when combined with the other evidence, provide some additional support for the conclusion that Bartholomew did not establish a new domicile in the USVI. Therefore, viewing the evidence as a whole, we agree with OAH's conclusion that Bartholomew remained domiciled in the District of Colum-

**9.** The check shows the name "Raphel Bartholomew" as the account holder. The ALJ did not question whether this is petitioner's account, nor do we.

**10.** The OAH found that the one-month USVI bank statement belatedly submitted with the motion for reconsideration did not suffice to show that Bartholomew had ongoing financial transactions with the bank for two consecutive years.

**11.** Bartholomew had purchased a new car but he ultimately decided to leave the car in

the District of Columbia. His decision to leave the car was based on economics, his family's need for a car, and his assessment that due to St. Thomas's small size and cheap public transportation, a car would not be necessary. During the OAH hearing, Bartholomew represented that his request to Ford Motor Co. to transport the car to the USVI was denied, but the motion for reconsideration included a letter from Ford granting the permission he had requested.

bia while he was living and working in the USVI.

Our inquiry is not complete, however, as we have concluded only that Bartholomew was domiciled in the District of Columbia during the relevant tax years. As we discuss below, an individual may be domiciled in one place yet establish residency for tax purposes in another. Thus, before we can decide whether OAH correctly concluded that petitioner was required to file a tax return in the District of Columbia, we also must determine whether petitioner qualified in 2003 and 2004 for the special tax treatment available to bona fide residents of the USVI, which would exempt him from the obligation to file federal (and, consequently, D.C.) tax returns for those years.

### B. Residence

 To determine if a taxpayer is a "bona fide resident" of the USVI, courts apply a different test than the one to determine domicile. In the tax context, residency "requires 'far less than domicile.'" *Vento*, 715 F.3d at 466 (quoting *Sochurek v. Comm'r*, 300 F.2d 34, 38 (7th Cir.1962)). Thus, even though some of the same underlying facts are considered for residency as for domicile, to establish residency in a place "does not require 'an intent to make a fixed and permanent home,'" as a person may simultaneously be a resident of multiple places, but may only be legally domi-

ciled in one. *Id.* (citing *Downs v. Comm'r*, 166 F.2d 504, 508 (9th Cir.1948)). However, to be considered a bona fide resident, the taxpayer must be more than a "mere transient or sojourner." *United States v. Auffenberg*, Criminal Action No. 2007–0047, 2008 WL 4115997, at *10 (D.Vi. Aug. 26, 2008) (quoting 26 C.F.R. § 1.871–2 (1992)).

Before Congress statutorily defined "bona fide resident" in 2004,[12] the term gained its meaning through case law. The federal courts with jurisdiction over the Virgin Islands, predictably, have had several opportunities to determine who qualifies as a "bona fide resident" of the USVI.

In *Auffenberg*, the United States District Court for the Virgin Islands, responding to a vagueness challenge, determined that "bona fide resident" was not a technical term, but one that a "person of 'common intelligence'" would be able to understand. *Auffenberg*, 2008 WL 4115997, at *9. The court relied on Black's Law Dictionary to define "bona fide," which it found to mean: "[m]ade in good faith; without fraud or deceit, and [s]incere, genuine." *Id.* (citation omitted). To define "resident," the court looked to the United States Treasury Regulation, 26 C.F.R. § 1.871–2(b) (1992), which defines when an alien individual is considered a U.S. resident for tax purposes. That regulation

---

**12.** In October 2004, Congress amended the Internal Revenue Code to clarify who qualifies as a bona fide resident of the USVI and other jurisdictions with unique tax treatment during a given tax year. The new law applied to the tax year beginning in 2005, after the tax years at issue in this case. American Job Creation Act of 2004, Pub.L. No. 108–357, § 908(a), 118 Stat. 1418 (2004). The tax code now provides that a "bona fide resident" is a person:

(1) who is present for at least 183 days during the taxable year in Guam, American Samoa, the Northern Mariana Islands, Puerto Rico, or the Virgin Islands, as the case may be, and

(2) who does not have a tax home (determined under the principles of section 911(d)(3) without regard to the second sentence thereof) outside such specified possession during the taxable year and does not have a closer connection (determined under the principles of section 7701(b)(3)(B)(ii)) to the United States or a foreign country than to such specified possession.

26 U.S.C. § 937(a) (2005).

provided (and still provides) in pertinent part:

> An alien actually present in the [Virgin Islands] who is not a mere transient or sojourner is a resident of the [Virgin Islands] for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the [Virgin Islands] and has no definite intention as to his stay, he is a resident. One who comes to the [Virgin Islands] for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the [Virgin Islands], he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned.

*Id.* at \*10 (quoting 26 C.F.R. § 1.871–2(b) (1992)).

In *Auffenberg,* the court found it sufficient that the defendants would have been on notice that "mere transient[s] or sojourner[s]" would not have been considered bona fide residents of the USVI. *Id.* Where, as here, the question of bona fide residency is a closer one, more guidance is needed. The Third Circuit recently addressed this issue in depth, on appeal from the District Court of the Virgin Islands. *See Vento,* 715 F.3d at 466–78.

The task for the Third Circuit was to determine whether any of the taxpayers qualified as a bona fide resident of the USVI during the 2001 tax year for purposes of the U.S.-tax exemption.[13] To do so, the court applied the eleven factors outlined in *Sochurek,* 300 F.2d at 38, an opinion addressing 554 residency in the context of 26 U.S.C. § 911, which applies to residency, for U.S. 555 tax purposes, in a foreign country:

(1) intention of the taxpayer;

(2) establishment of his home temporarily in the foreign country for an indefinite period;

(3) participation in the activities of his chosen community on social and cultural levels, identification with the daily lives of the people and, in general, assimilation into the foreign environment;

(4) physical presence in the foreign country consistent with his employment;

(5) nature, extent and reasons for temporary absences from his temporary foreign home;

(6) assumption of economic burdens and payment of taxes to the foreign country;

(7) status of resident contrasted to that of transient or sojourner;

---

**13.** Richard Vento and his family became embroiled in a tax controversy following the sale of Vento's technology company which resulted in capital gains of $180 million for the 2001 tax year. *Vento,* 715 F.3d at 459. Vento's tax problems began when the Virgin Islands Bureau of Internal Revenue (VIBIR) issued notices of tax deficiency and penalties against Vento, his wife, and three daughters for over $31 million. *Id.* The IRS soon followed suit. *Id.* The taxpayers challenged the VIBIR's and IRS's actions before the United States District Court of the Virgin Islands. The United States intervened, arguing that the taxpayers should have paid their 2001 taxes to the IRS instead of to the VIBIR because they were not bona fide residents of the USVI at the time. Following a bench trial, the court held that the taxpayers were not bona fide residents of the USVI. Both the taxpayers and VIBIR appealed to the Third Circuit. *Id.* at 460.

(8) treatment accorded his income tax status by his employer;

(9) marital status and residence of his family;

(10) nature and duration of his employment; whether his assignment abroad could be promptly accomplished within a definite or specified time; [and]

(11) good faith in making his trip abroad; whether for purpose of tax evasion.

*Vento*, 715 F.3d at 466 (citing *Sochurek*, 300 F.2d at 38); *see also id.* at 469 (applying *Sochurek* to the issue of bona fide residency of the Virgin Islands in the same way it would apply to "any other claim of foreign residency under § 911").

■ The Third Circuit grouped these eleven factors into four broad categories to streamline its analysis. First, the court considered the taxpayer's intent, which is addressed by factors (1), (2), (7), (10), and (11). The taxpayer's intent to "remain in a place for an indefinite or at least substantial period of time" can be shown by: "the establishment of a long-term home, a long-term employment assignment," or other evidence that indicates the taxpayer's intent to be more than a "mere transient or sojourner." *Vento*, 715 F.3d at 467 (citing *Bergersen v. Comm'r*, 109 F.3d 56, 61 (1st Cir.1997)); *Sochurek*, 300 F.2d at 38. For example, if the taxpayer only had "temporary housing and employment arrangements" and intended to depart when those arrangements concluded, he would likely not be considered a bona fide resident. *Vento*, 715 F.3d at 467.

■ Second, the court considered the physical presence of the taxpayer, which

covers *Sochurek* factors (2), (4), (5), and (7). *See Vento*, 715 F.3d at 467. Physical presence in a place supports a finding of bona fide residency, and extended absences will weigh against it, unless justified for good-faith reasons such as work-related travel. *See id.*

■ The third consideration implicates *Sochurek* factors (3) and (9), and requires the court to consider the taxpayer's social, family, and professional relationships. *Id.* The court explained that a claim of bona fide residency will be supported by evidence that the taxpayer has established social and professional ties with the community and relocated the taxpayer's family to the place of claimed residency. *Id.*

■ The final consideration implicates *Sochurek* factors (6) and (8), and requires the court to evaluate the taxpayer's own representations about his status as a resident of the place. Evidence weighing in favor of a finding of bona fide residency includes the taxpayer's own self-identification as a resident, payment of local taxes, and performance of civic obligations and other legal formalities. *See id.* at 468.

We adopt *Sochurek's* eleven factors, as helpfully organized into categories by the *Vento* court, as the appropriate test to determine whether an individual taxpayer was a bona fide resident of the USVI (or another United States jurisdiction with special exemption provisions based on residence), prior to Congress's adoption, in 2004, of the statutory definition of "bona fide resident." 26 U.S.C. § 937.[14] Applying that test to the facts in this case, we have to disagree with OAH's determination that Bartholomew was not a bona fide USVI resident. First, its reasoning at times appears to conflate the concepts of domicile and residency.[15] Moreover, even

---

14. See *supra* note 12.

15. For example, noting that Bartholomew's tax returns identified him as "married" and

though OAH found Bartholomew's claims of financial, social, and civic ties to the community in the USVI to be uncorroborated and unconvincing,[16] the facts that he was employed by the government of the USVI and actually lived and worked there full-time for three years, with only work-related visits to the District when he would also see his family, until he unexpectedly resigned due to illness and returned to the District of Columbia in 2005, are powerful indicators that he was a bona fide resident—even if not a domiciliary—of the USVI in 2003 and 2004. *See Vento*, 715 F.3d at 467 (referring to physical presence and "a long-term employment assignment" as indicators of residence).

Any error is harmless in terms of the ultimate outcome, however. As a matter of law, even though Bartholomew was a bona fide USVI resident, by failing to file a USVI return for tax years 2003 and 2004, as he was required to do, he was not eligible to take advantage of the special tax provision available to bona fide residents of the USVI that would have ex-empted him from the obligation to file federal and D.C. income tax returns.

To take advantage of this tax provision, Bartholomew needed to (1) demonstrate his bona fide residency, (2) file a tax return with the USVI declaring income from all sources, and (3) fully pay his tax liability to the USVI. 26 U.S.C. § 932(c)(4). Here, Bartholomew concedes that he did not file a tax return with the USVI and, thus, did not fulfill all the requirements of § 932(c)(4). *See Vento*, 715 F.3d at 465 (citation omitted) ("Thus, bona fide Virgin Islands residents who fully report their income and satisfy their obligations to the VIBIR do not pay taxes to the IRS."); *Huff*, 135 T.C. at 226 ("If the individual fails to meet any of [the § 932(c) ] requirements, he must file a Federal income tax return with the IRS."). Therefore, as of the date of the OAH order, Bartholomew did not qualify for the special tax provision available to bona fide residents of the USVI.[17] Because we agree with OAH that Bartholomew had not abandoned his domicile in the District of Columbia, we can affirm, as a matter of law based on settled

claimed two exemptions (one for his child), OAH commented that petitioner "clearly did not intend to establish residency [in the USVI], but instead intended to return to the District of Columbia where his wife and child resided." *Bartholomew*, 2011 WL 8844133, at *8. Similarly, the OTR auditor's letter stated that the determination that Bartholomew's time in the USVI did not exempt him from the obligation to file a D.C. tax return was based on lack of evidence of "intent to abandon your residence in the District of Columbia or to establish a new domicile in the U.S. Virgin Islands."

16. OAH stated that petitioner did not provide "conclusive evidence such as cancelled checks made to charities or community events to substantiate his social activities in the U.S. Virgin Islands." *Bartholomew*, 2011 WL 8844133, at *6. However, OAH may have applied too demanding an evidentiary basis, when it noted that there was no record evi-dence establishing that Bartholomew "participated continuously in the activities of his chosen community" in USVI because his "proof of donations to a charity is insufficient to address continuous activities such as joining a church and paying tithes and offering to a specific church each week." *Id.* Although charitable giving to organizations in a community can be an indicator of ties to that community, that factor does not translate into a requirement that, to prove bona fide residency, a taxpayer must do so in any particular manner.

17. Bartholomew indicated at oral argument before this court, that even though he had not yet filed a USVI tax, he could still do so after this appeal is completed. Whether Bartholomew may still file in the USVI, amend his federal tax return, and, in effect, "unwind" what has taken place, is not a question before us and is beyond the scope of this opinion.

facts, OAH's ultimate determination that for the 2003 and 2004 tax years, he was not exempt from filing a tax return with the IRS and, thus, was required to do so with the District of Columbia. *See* D.C.Code § 47–1805.02 (2001); *cf. Securities & Exchange Comm'n v. Chenery Corp.,* 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943) ("If the action rests upon an administrative determination—an exercise of judgment in an area which Congress has entrusted to the agency—of course it must not be set aside because the reviewing court might have made a different determination were it empowered to do so. *But if the action is based upon a determination of law as to which the reviewing authority of the courts does come into play,* an order may not stand if the agency has misconceived the law." (emphasis added)); *Helvering v. Gowran,* 302 U.S. 238, 247, 58 S.Ct. 154, 82 L.Ed. 224 (1937) (same, with respect to reviewing court's affirmance of agency decision as a matter of law).

### III. Amount of the D.C. Tax Assessment

■ In addition to arguing that he should not be required to file a tax return with the District of Columbia for the 2003 and 2004 tax years, Bartholomew argues that the amount assessed by the District is too high. Bartholomew argues for a lower amount because he claims he should benefit from filing as a head of household and receive deductions for moving expenses and to reflect taxes withheld from his paycheck when he was working in the USVI. We reject these arguments.

Bartholomew filed his 2004 federal tax return as head of household. At the time, he was living in the USVI and his wife and daughter were living in the District of Columbia. As part of its audit, OTR determined, and OAH affirmed, that Bartholomew was not eligible to file as head of household because his daughter did not live with him in the USVI.

D.C.Code § 47–1801.04(22) (2001) adopts the definition of "head of household" from the federal tax code, 26 U.S.C. § 2(b), which provides that:

> an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, is not a surviving spouse ..., and either (A) maintains as his home a household which constitutes for more than one-half of such taxable year the principal place of abode, as a member of such household, of (i) a qualifying child of the individual ..., or (ii) any other person who is a dependent of the taxpayer ..., or (B) maintains a household which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer....

26 U.S.C. § 2(b)(1).

Both OTR and OAH found that Bartholomew was ineligible to file as head of household because his daughter did not live with him. Courts that have addressed the question are split on whether an individual may "maintain" a child's home for head of household purposes without living in it,[18] but it is a question that we need not decide today. The record shows that at all

---

18. *Compare Smith v. Comm'r,* 332 F.2d 671, 673 (9th Cir.1964) (holding that taxpayer who maintained two homes, one for herself in Nevada and one for her adopted son in California, could claim to be head of household), *with Johnson v. Comm'r,* T.C. Memo 1981–414 (holding that taxpayer who lived in New York and paid for daughter's room and board in Virginia could not claim to be head of household because the Virginia apartment could not be considered the taxpayer's home), *and Muse v. United States,* 434 F.2d 349, 353 (4th Cir.1970) (concluding that to file as head of household, taxpayer must actually live in the qualifying household a substantial portion of the time during the tax year).

relevant times, Bartholomew was married, as evidenced by the marital status reported on the personnel documents from his USVI employer. Bartholomew has not argued that he was not married or that he was legally separated. *See* 26 U.S.C. § 2(b)(2) ("[A]n individual who is legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married.").

To be eligible to file as head of household, a taxpayer must be unmarried or qualify under 26 U.S.C. § 7703(b), which treats a married taxpayer as "unmarried" if he or she meets three conditions:

(1) an individual who is married . . . and who files a separate return maintains as his home a *household* which constitutes for more than one-half of the taxable year the *principal place of abode of a child* (within the meaning of section 152(f)(1)) with respect to whom such individual is entitled to a deduction for the taxable year under section 151 (or would be so entitled but for section 152(e)),

(2) such individual furnishes over one-half of the cost of maintaining such household during the taxable year, *and*

(3) during the last 6 months of the taxable year, such individual's *spouse is not a member of such household* . . . .

26 U.S.C. § 7703(b) (emphasis added).

In this case, Bartholomew does not qualify as an "unmarried" individual because he fails to fulfill all three conditions of § 7703(b). OAH found that while Bartholomew was living in the USVI, his wife and daughter were living together in the District of Columbia at the family's apartment on Farragut Street. This finding is supported by substantial evidence. Bartholomew testified that he visited his wife and daughter at their Farragut Street apartment when he was in the District of Co-

lumbia on business trips. Bartholomew purchased the Farragut Street apartment in early 2005, while he was still living in the USVI, and eventually moved back in with them upon his return to the District of Columbia in May of that year. This testimony provides a basis for the inference that Bartholomew's wife lived with, and cared for, their young daughter during the last six months of the tax year 2004 in the apartment on Farragut Street. Thus, because Bartholomew was married and because his wife lived in the same household as their daughter for at least the last six months of 2004, he cannot be considered "unmarried" for tax purposes. *See* 26 U.S.C. § 7703(b)(3).

We can summarily dismiss Bartholomew's claim that he was entitled to deductions for his moving expenses and taxes withheld by his employer in the USVI. We agree with OAH that the bare assertion, unsupported by any evidence that he incurred moving expenses, could be disallowed by OTR. *See Square 345 Associates Ltd. Partnership v. District of Columbia*, 721 A.2d 963, 965 (D.C.1998) (noting that taxpayer "bears the burden to show that the assessment it challenges is incorrect"). Also, an individual taxpayer may not claim a deduction for income taxes paid to another jurisdiction. *See* D.C.Code § 47–1803.03(b)(1) (2001). OTR suggests in its brief that Bartholomew may be eligible for a credit for taxes paid to the USVI under D.C.Code § 47–1806.04(a) (2001). That issue is not properly before us, however, and remains for further discussion between the parties.

For all of the foregoing reasons, the order of the Office of Administrative Hearings is hereby

*Affirmed.*